In re Orville Wayne **SOWERS** & Doris Jean Sowers, Debtors.

Margaret **ROBB**, Trustee, Plaintiff,

v.

Orville Wayne **SOWERS** & Doris Jean Sowers et al., Defendants.

Bankruptcy No. 87-40321.
Proc. No. 87-4077.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Lafayette.

Feb. 22, 1989.

Margret Robb, Joseph Bartlett, Lafayette, Ind., for trustee/plaintiff.

## MEMORANDUM OF DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Prior to joining in the bankruptcy petition initiating this case, the debtor, Mrs. Sowers, was employed by Bank One, Lafayette, N.A. Among the benefits the bank offered its employees was a 401(k) plan. Mrs. Sowers terminated her employment on June 12, 1987. As a result of termination, her contributions to the plan, which had a value in excess of $2,300.00, became immediately payable to her. On July 24, 1987, Mrs. Sowers and her husband filed a petition for relief under Chapter 7 of the Bankruptcy Code, creating the bankruptcy estate of 11 U.S.C. § 541. Plaintiff, Margaret Robb, was appointed and duly qualified as the bankruptcy trustee.

In the course of performing her duty to "collect and reduce to money the property of the estate," 11 U.S.C. § 704(1), the Trustee contacted the bank with the request that debtor's 401(k) funds be delivered to her in her capacity as Trustee. Debtors' counsel contacted the bank and instructed it not to comply with the re-

quest. Miss Robb then contacted debtors' counsel reiterating her belief that the money in question was property of the estate. In an effort to give counsel the benefit of any doubt, however, she asked that he provide her with any authority which would support his apparent position that the Trustee was not entitled to this particular asset. Counsel replied to this inquiry on November 2, 1987. In his letter of that date, he agreed with the Trustee "that the monies due Mrs. Sowers are definitely within the estate of bankruptcy." His objection was based upon the informality of the procedure the Trustee had employed in her attempt to obtain the funds. Counsel suggested "if you file a complaint in federal court for its turnover, and hearing is held and the matter decided that such should be turned over to you, than [sic] I would be glad to turnover such." Counsel continued by acknowledging that it was definitely within the Trustee's power to demand turnover of the 401(k) proceeds, yet, he also requested the Trustee to consider the matter on a more practical level, based upon the proposition that depriving Mrs. Sowers of the proceeds would not provide a meaningful distribution to creditors.

The Trustee responded to counsel's position by reminding him of her powers and duties as Trustee of the bankruptcy estate. She also reminded counsel of his clients' obligation to turnover to the estate any non-exempt assets. The Trustee closed by informing counsel that unless he advised the bank to release the funds to the Trustee, she would be required to file a complaint for turnover, which would also seek the recovery of attorney fees.

Debtors' counsel did not comply with or respond to this final request. Accordingly, the Trustee initiated this action against both the debtors and the bank in order to recover the funds in question. On behalf of his clients counsel filed an answer which, despite his earlier confession to the Trustee, specifically denied that the 401(k) plan was property of the bankruptcy estate. The answer also denied that the Trustee had previously demanded turnover of the asset and that his clients had failed

to comply. By contrast, Bank One's response was to admit that the funds in question were property of the estate and yet claimed by the debtors. Accordingly, the bank asked the court's instruction as to whom the funds should be distributed.

Because of debtors' denial of the allegations contained in the Trustee's complaint, particularly the allegation that the 401(k) plan constituted property of the bankruptcy estate, the issues raised could not be resolved based upon the pleadings. The Trustee was required to file a motion for summary judgment, together with supporting affidavits and a memorandum of law. Debtors failed to respond to the motion or request a hearing thereon. Based upon the materials submitted in support of the motion, judgment was entered, directing turnover of the asset to the Trustee.

The matter is now before the court on the Trustee's request for sanctions. Sanction are sought pursuant to Bankruptcy Rule 9011 and/or 28 U.S.C. § 1927. A hearing on this issue was initially held on November 15, 1988 at which the Defendants/Debtors failed to appear either in person or by counsel, although both the debtors and their counsel both were served with a copy of the scheduling order. As a result, by an order dated December 5, 1988, the matter was rescheduled to January 19, 1989, where it was allotted a specific block of time of the court's calendar for the reception of evidence. The court also directed the parties to file separate pre-trial orders or statements concerning the matter on or before January 9, 1989. Although served with a copy of the order of December 5, 1988, debtors' counsel did not comply with the court's direction to submit a pre-trial statement. Neither did he appear at the hearing of the 19th. His client, Mrs. Sowers, did, however, appear and attempted to defend against the Trustee's request, pro-se.

Based upon the evidence presented at the hearing of the 19th, in addition to the facts as set forth above, it appears that debtors' position with regard to the question of turnover was based entirely upon the advice Mrs. Sowers received from her coun-

sel. Without any knowledge of the intricacies of bankruptcy law, Mrs. Sowers relied entirely upon her attorney's advice in determining the proper course of action to take vis-a-via the Trustee. The court also received evidence concerning the Trustee's attorney fees and expenses incurred in connection with her efforts to obtain possession of the debtor's interest in the 401(k) plan and the request for sanctions.

■ For the reasons set forth below, the court finds that the Trustee's request for sanctions and/or attorney fees is warranted, pursuant to both Bankruptcy Rule 9011 and 28 U.S.C. § 1927. This award should be imposed upon debtors' counsel and not his clients. Having been served with copies of the court's scheduling order, counsel knew that the court would be considering the imposition of sanctions or attorney fees. This notice was sufficient to accord him any right of due process to which he may have been entitled. Accordingly, his failure to appear at the hearing does not prevent the court from imposing the award upon him. *See Lepucki v. Van Wormer*, 765 F.2d 86, 88 (7th Cir.1985).

Both Bankruptcy Rule 9011 and § 1927 are fee shifting statutes. Their purpose is to ensure

> that in a system requiring each party to bear its own fees and costs, ... each party really *does* bear the costs and does not foist expenses off on its adversaries.... Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes....
>
> The best way to control unjustified tactics in litigation is to ensure that those whose create costs also bear them. *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985) (emphasis original).

Consequently, "when an attorney recklessly creates needless costs the other side is entitled to relief." *Id.*

Although both Rule 9011 and § 1927 have this same underlying purpose, the conduct which triggers their operation is different. Rule 9011 comes into play when an attorney or a party signs and submits a pleading or other paper, the contents of which have not been subject to a reasonable inquiry or which is not well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In contrast, § 1927 is directed against conduct which unreasonably and vexatiously multiplies the proceedings in any case. To an extent these two provisions overlap, so that the same act may constitute a violation of either or both of them. We shall consider the applicability of each to this case.

While the provisions of Bankruptcy Rule 9011 are different from its counterpart, Rule 11 of the Federal Rules of Civil Procedure, for the purposes of this decision, these differences are meaningless. In relevant part, the Rule provides

> Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, *shall* impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorneys' fee. Bankruptcy Rule 9011 (emphasis added).

Because there is no substantive difference between Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure, the law, which has developed under Rule 11, is equally applicable in interpreting and applying its Bankruptcy counterpart. *In re Mapson,* 93 B.R. 161, 168 (Bankr.C.D.Ill. 1988). Its applicability is not limited to spurious or unjustified complaints. With the exception of the specific items listed in Bankruptcy Rule 9011, it applies to every pleading or other paper filed or served in connection with the case. Consequently, it has been applied to such diverse situations as motions for summary judgment and unjustified requests for sanctions. In a bankruptcy context, Bankruptcy Rule 9011 has also been used to sanction the unwarranted opposition to an obviously meritorious claim for relief. *See In re Saltenberger,* 61 B.R. 1005 (Bankr.E.D.Pa.1986). A violation of the Rule can be found in the signing and filing of an answer to a complaint which denies allegations that are irrefutably and indisputably true. *See In re Two Star Surgical Supply Inc.,* 70 B.R. 241 (Bankr.E.D.N.Y.1987).

■ Rule 11 has several interwoven themes in the conduct it condemns and the standards it imposes upon litigants and/or their counsel. *See Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir.1987). Whether or not the obligations it imposes have been fulfilled "is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1435 (7th Cir.1987).

> The test under Rule 11 is objective: litigation must be grounded in an objectively reasonable view of the facts and the law, and, if it is not, the lawyer or party proceeding recklessly must foot the bill. *In re Ronco, Inc.,* 838 F.2d 212, 217 (7th Cir.1988) (citation omitted).

Consequently, the court must "undertake an objective inquiry into whether the party or his counsel 'should have known that his position is groundless....'" *Dist. No. 8, Intern. Ass'n of Mach., Etc. v. Clearing,* 807 F.2d 618, 622 (7th Cir.1986) (citations omitted).

The first part of Rule 11 is the frivolousness clause. This requires counsel to make a reasonable inquiry into both the law and the facts concerning his position. The failure to do both is a violation of the Rule. *Brown v. Federation of State Medical Boards of U.S., supra,* 830 F.2d at 1435. The results of this inquiry must reveal that the position being taken by counsel is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Consequently, even though counsel may undertake a proper inquiry into the law and the facts, if that inquiry reveals the position is without merit and counsel proceeds in spite of this conclusion the Rule is violated.

The second part of Rule 11 is the improper purpose clause. This demands that the paper "may not be interposed for purposes of delay, harassment, or increasing the costs of litigation." *Brown v. Federation of State Medical Boards of U.S., supra,* 830 F.2d at 1436. This too is measured by an objective standard.

Since the Rule is designed to discourage unnecessary filings, its violation is complete when the offending paper is filed. *Szabo Food Service, Inc. v. Canteen Corp., supra,* 823 F.2d at 1077.

■ In this instance, debtors' counsel obviously violated Rule 11 when he submitted an answer denying that the property in question was property of the bankruptcy estate. Admittedly, counsel made a reasonable investigation of both the law and the facts surrounding the Trustee's right to this asset. The result of this investigation, however, was counsel's admission that the asset did constitute property of the bankruptcy estate and that the Trustee was entitled to its possession. In spite of this conclusion, counsel filed an answer denying what he had come to realize was true. As a result, the position he took in response to the Trustee's complaint was completely frivolous and without merit. It had no foundation in an objectively reasonable view of the facts or the law. As such, the denial was not well-grounded in fact

486

and was not warranted by either existing law or any argument for the change or modification of existing law.

■ Debtor's counsel has also violated the second part of Rule 11, the improper purpose clause. There can never be a proper purpose in submitting a paper or taking a position which counsel knows is legally and factually unjustified. Doing so can have no purpose other than harassment, delay, or increasing the costs of litigation.

28 U.S.C. § 1927 reads:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"The purpose of section 1927 is to penalize attorneys who engage in dilatory conduct." *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir.1984) (citation omitted). Consequently, it may only be used to sanction needless delay. *Id. See also, Indianapolis Colts v. Mayor & City Council*, 775 F.2d 177, 183 (7th Cir.1985).

The critical element to an award under § 1927 is bad faith and such a finding is usually necessary. *In re Peoro*, 793 F.2d 1048, 1051 (9th Cir.1986). "Despite its sound, however, 'bad faith' has an objective meaning as well as a subjective one." *In re TCI Ltd., supra*, 769 F.2d at 445 (citation omitted). "Subjective bad faith or malice is important only when the suit is objectively colorable." *Id.* Consequently,

[a] court may impose sanctions under 28 U.S.C. § 1927, against an attorney where that attorney has acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' or where a *'claim [is] without a plausible legal or factual basis and lacking in justification.'* In determining whether an attorney's actions were objectively unreasonable 'a court may infer intent from a total lack of factual or legal basis for a

suit.' *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988) (emphasis original) (citations omitted).

Thus,

[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. *In re TCI Ltd., supra*, 769 F.2d at 445.

■ Counsel's conduct with regard to the entire question of the Trustee's right to the debtor's interest in the 401(k) plan was obviously and objectively calculated to unreasonably and vexatiously multiply proceedings within the administration of the bankruptcy case. In spite of his conclusion that the asset was property of the bankruptcy estate, which the Trustee was entitled to administer, debtors' counsel opposed and resisted the Trustee's efforts. He adopted a position that he knew and that a reasonably careful attorney would have known to be unsound. He acted not only recklessly or with indifference to the law but in the teeth of what he knew to be the law.

A petition for relief under Chapter 7 of the Bankruptcy Code not only confers benefits upon a debtor but also imposes burdens. The most obvious benefit, of course, is the bankruptcy discharge. The burdens are the debtor's duties, which must be fulfilled as a prerequisite to the discharge. In part, these duties are found at § 521 of the Bankruptcy Code. Among the various obligations imposed upon a debtor is the duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties." 11 U.S.C. § 521(3). The trustee's duties include the obligation to "collect and reduce to money the property of the estate for which such trustee serves...." 11 U.S.C. § 704(1). Consequently, the Bankruptcy Code also imposes a duty upon debtors to "surrender to the trustee all property of the estate...." 11 U.S.C. § 521(4).

It should be emphasized that the relationship between a trustee and a debtor is not supposed to be adversarial. The duties imposed by § 521 are affirmative obligations. A trustee is not required to play detective or to chase the debtors into court to gain their cooperation. *In re Kent,* 92 B.R. 540, 543 (Bankr.S.D.Fla.1988); *In re Bianco,* 5 B.R. 466, 468 (Bankr.D.Mass.1980). Indeed, the concept of cooperation with and surrender to the trustee connote the need for willing assistance. Because "a debtor's cooperation is essential, [it is] a prerequisite to a granting of discharge." *In re McDonald,* 25 B.R. 186, 189 (Bankr.N.D. Ohio 1982).

In this instance, because of counsel's attitude, he transformed what should have been an amicable and cooperation relationship into an adversarial one. Rather than assisting his clients in fulfilling their duties under the Bankruptcy Code, he counseled them to either ignore or affirmatively violate those obligations, in spite of what he knew to be the facts and the law. As a result, the Trustee's administration of the bankruptcy estate and fulfillment of her obligations under the Bankruptcy Code has needlessly become more time consuming, difficult, and expensive than it should have been. Under these circumstances, there can be no conclusion but that counsel has unreasonably and vexatiously multiplied these proceedings.

Having concluded that counsel has violated both Bankruptcy Rule 9011 and § 1927, we must determine the appropriate sanction or award. Under Bankruptcy Rule 9011, sanctions are mandatory once a violation of the Rule has occurred. Under § 1927, whether or not sanctions are imposed is a question committed to the court's discretion.

Under both Rule 9011 and § 1927 the nature and the amount of any sanction is committed to the court's discretion. Thus, "the court may impose a penalty as light as a censure and as heavy as is justified—a fine that may exceed the amount of fees incurred by the opposing party." *Frantz v. Powerlifting Federation,* 836 F.2d 1063, 1066 (7th Cir.1987). This does not mean

that anything goes. "[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' " *Id.* (citations omitted). Thus, the court should strive to fashion "the least severe sanction [that is] adequate to serve the purpose...." *Brown v. Federation of State Medical Boards of U.S., supra,* 830 F.2d at 1437 (citations omitted). We should do so, however, in the context of the purposes to be served by Rule 11 and § 1927. These purposes are both compensatory and deterrent.

In this instance, the Trustee seeks approximately $1,750.00. This represents the attorney fees and expenses the Trustee has incurred, for all of the time and effort associated with the entire process of inquiring into and obtaining turnover of the funds in question. The services begin with the initial correspondence and extend through the conclusion of the sanction hearing. While the Trustee is entitled to recover an award from debtors' counsel, neither Rule 11 nor § 1927 will justify everything she has requested.

Insofar as Rule 11 is concerned, while its violation is complete once the offending paper is filed or served, the violation does not occur *until* that time. Counsel filed and served the answer to Plaintiff's complaint on December 30, 1987. This is when the violation of the Rule's obligations took place. Since it is axiomatic that one cannot be injured by a violation of Rule 11 until that violation is occurred, none of the time or expenses incurred prior to this date can be recovered. The attorney fees and expenses incurred after December 30, 1987 are, however, another matter.

Based upon the evidence and testimony presented at the hearing, after December 30, 1987, the Trustee incurred attorney fees in the sum of $1,090.50 in connection with prosecuting the turnover complaint to judgment and the request for sanctions. This consists of 6.8 hours of time devoted by Margaret Robb, as Attorney for the Trustee at an hourly rate of $85.00; 2.3 hours for Margaret Nolan at an

hourly rate of $75.00; and 3.4 hours for Joseph Bartlett, at an hourly rate of $100.00. The hourly rates for each of these attorneys is reasonable based upon the experience of counsel and the work performed. Given the circumstances of this case, the time devoted to the matter is also reasonable.

Rule 11 authorizes the district court to award as a sanction 'reasonable expenses' which may include 'a reasonable attorney's fee.' The reasonableness requirement by its nature hinges on the particular facts and circumstances presented in a given case and looks not only to the hours and billing rate involved in responding to the other party's sanctionable conduct, but also to the appropriateness of the response taken. A party defending against a frivolous paper has a duty under Rule 11 to mitigate it legal fees and expenses by resolving frivolous issues quickly and efficiently. *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988) (citations omitted).

The court must recognize, however, that [i]t is rarely possible to determine how much time would have been needed, had the winner run a tight ship. We are inclined to resolve doubts in favor of the party in the right, the one entitled to be made whole. *Matter of Central Ice Cream Co.*, 841 F.2d 732, 735 (7th Cir. 1988).

Accordingly, we find that not only are the hourly rates of the attorneys involved reasonable and that the time devoted to this matter is reasonable, but also that the response of the Trustee's attorneys to the frivolous pleading were reasonable and appropriate, based upon the particular facts and circumstances presented.

■ Section 1927 authorizes the award of excess costs, expenses, and attorney fees reasonably incurred because of the unreasonable and vexatious multiplication of proceedings. All of the fees and expenses awarded to the Trustee as a consequence of counsel's violation of Rule 11 are also recoverable under § 1927. Section 1927 is, however, broader in scope than Rule 11. It is not triggered by a frivolous paper or pleading. Instead, it focuses upon counsel's conduct during the course of the judicial proceeding. Consequently, conduct which may not be sanctionable under Rule 11 may, nonetheless, justify an award under § 1927. This is such a case.

■ Among the obligations counsel assumes by representing a bankruptcy debtor is that of assisting the client to fulfill the duties imposed upon it by the Bankruptcy Code. Indeed, this obligation is so significant that, in appropriate circumstances, counsel may receive compensation from the estate, as an administrative expense, for assisting the debtor in fulfilling its duties.

■ In this instance counsel not only refused to assist his clients in fulfilling their duties to cooperate with the Trustee and to surrender property of the bankruptcy estate but, instead, affirmatively counseled them to ignore or violate those duties. Accordingly, the Trustee's is also entitled to recover an additional $212.50, representing 2.5 hours of attorney time, at $85.00 an hour, for the time expended in connection with turnover between November 20, 1987 and the date of Defendants' answer, December 30, 1987. November 20 has been selected because, based upon the Trustee's last letter to counsel, this was the last available date by which debtors' counsel could voluntarily comply with the turnover request, without the need for initiating an adversary proceeding. In addition to these attorney fees, the Trustee is also entitled to recover the filing fee, which was deferred upon the initiation of this proceeding because the estate did not contain sufficient assets with which to pay it, in the sum of $120.00. Consequently, the total excess costs, expenses, and attorney fees reasonably incurred, which the Trustee is entitled to recover, pursuant to 28 U.S.C. § 1927, is the sum of $1,423.00. This is the amount of fees and expenses the estate has reasonably incurred because of counsel's conduct and, but for that conduct, would have been available for distribution to creditors.

■ The fees and expenses awarded to the Trustee, as set forth above, fully accomplish the compensatory purpose of both Rule 11 and § 1927. They are not, how-

ever, sufficient to also satisfy the deterrent purpose of Rule 11. This goal is even more important than the goal of compensation. *Brown v. Federation of State Medical Boards of U.S., supra,* 830 F.2d at 1438.

The court considers counsel's misconduct to be very serious indeed. This seriousness goes beyond the fact that he counseled his clients to ignore or violate their duties as debtors under the Bankruptcy Code. When the Trustee attempted to perform her duties in an efficient, expeditious, and economical fashion, counsel literally adopted a "so sue me" attitude, in spite of his knowledge of the Trustee's absolute entitlement to the asset. This attitude was based on counsel's apparent hope that if he could make turnover difficult, unpleasant, time consuming, and expensive enough for the Trustee, in view of the amounts involved, the Trustee might decide not to pursue the issue and his clients would be able to retain an asset to which they had no right. This reflects his desire to use litigation as a predatory instrument instead of a method for resolving legitimate disputes. It is an attitude which has no place in litigation generally or in the bankruptcy courts and must be condemned. Such an attitude is unworthy of a bankruptcy practitioner or an officer of the court. Accordingly, additional sanctions are appropriate, pursuant to Bankruptcy Rule 9011. It is our opinion that counsel should forfeit the attorney fee he received, prior to the petition, for his services in connection with this case. A review of the disclosure which counsel filed, pursuant to Bankruptcy Rule 2016, indicates that he received the sum of $350.00. This sum shall be payable, forthwith, to the clerk of this court.

Throughout its consideration of both Rule 9011 and § 1927, the court has been mindful that the question of sanctions is one which must be approached cautiously. Sanctions have an intangible impact, far beyond a monetary penalty. The courts must guard against the risk that the imposition of sanctions may chill the creative and zealous advocacy which is necessary for the evolution of the law, as well as the potential impact upon the sanctioned lawyer's professional reputation and standing.

This caution and these considerations do not, however, indicate that either the fact or the amount of the sanctions imposed are inappropriate.

An appropriate order will be entered.