**Ray RUSSELL, Angelo Rainaldi, John Gulik and Edward Hess, Petitioners–Appellants,**

v.

**BOARD OF PLUMBING EXAMINERS OF THE COUNTY OF WESTCHESTER and County of Westchester, Respondents–Appellees.**

No. 99–9532.

United States Court of Appeals, Second Circuit.

Jan. 5, 2001.

---

* The Honorable Jose A. Cabranes was originally scheduled to participate in deciding this appeal but recused himself due to a disqualification. The remaining two members of the panel, who agree on the disposition, issue this order pursuant to 2d Cir.R. § 0.14(a),(b). *See Murray v. National Broad. Co., Inc.*, 35 F.3d 45, 47–48 (2d Cir.1994).

Robert M. Kerrigan, New York, NY, for appellant.

Linda M. Trentacoste, Senior Assistant County Attorney; Alan D. Scheinkman, County Attorney for the County of Westchester; Stacey Dolgin–Kmetz, Chief Deputy County Attorney; Mary Lynn Nicholas, Assistant County Attorney, for appellee.

Present McLAUGHLIN, POOLER, Circuit Judges, DRONEY, District Judge.*

SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Ray Russell, Angelo Rainaldi, John Gulick and Edward Hess appeal from that

* The Honorable Christopher F. Droney, United States District Court Judge for the District of Connecticut, sitting by designation.

part of the district court's judgment dismissing their claims that Westchester County's plumber licensing scheme denied them their due process and equal protection rights as guaranteed by the Fourteenth Amendment of the Constitution, brought under 42 U.S.C. § 1983. Plaintiffs also appeal from the district court's finding that they lacked standing to address the issue of whether the adoption of the plumber licensing law violated the Home Rule provisions found at Article IX, Section 2(d) of the New York State Constitution. For the reasons given below, we affirm.

Before January 1, 1996, those wishing to work as master plumbers obtained licenses from those individual municipalities in Westchester County (the "County") requiring licenses. Four municipalities within the County did not require licensing. A number of municipalities recognized each others' licenses, allowing master plumbers to become licensed through reciprocity. The County lacked authority to issue valid countywide licenses.

The New York Legislature enacted County Law § 236–a, effective July 28, 1993. That statute provided:

> 1. Notwithstanding the provisions of the general city law or any other law to the contrary, the county of Westchester is hereby authorized to establish a Westchester county board of plumbing examiners . . .

County Law § 236–a (McKinney's 2000).

Effective January 1, 1996, the County, through Local Law 13–1995, created a countywide licensing system for plumbers. It provided, in relevant part:

> All licensed Master Plumbers within the county of Westchester as of January 1, 1996, who have actively performed as a Master Plumber within a period of one (1) year prior to January 1, 1996, shall be issued a Master Plumber's license by the County Board of Plumbing Examiners restricted to the communities in which said Master Plumbers were licensed on January 1, 1996.

Master plumbers were able to grandfather into communities where they received a license via reciprocity, but could not obtain new licenses via reciprocity after the legislation went into effect. Countywide licenses are available only by passing an examination. With some exceptions not relevant here, all work done by journeymen can be done only under the supervision of a master plumber, and only master plumbers can deal directly with consumers.

Each of the plaintiffs earned master plumber licenses in at least one municipality prior to the enactment of the new county law. While one plaintiff passed the exam and received a new countywide license, the others hold limited licenses obtained via grandfathering.

Plaintiffs sought to have the new law declared unconstitutional and to have all pre-existing master plumber licenses declared valid countywide. Plaintiffs alleged the licensing law violated their Fourteenth Amendment equal protection and due process rights. The plumbers argued the restricted master plumber licenses limited the rights of the restricted license master plumbers to work in jurisdictions where they were formerly licensed while still burdening all master plumbers with the liabilities of the law. Plaintiffs argued no rational basis existed for discriminating between master plumbers geographically. Plaintiffs also raised a variety of privacy claims, none of which are before us on appeal.

Ruling on a motion for summary judgment, the district court held defendants offered sufficient rational reasons for distinguishing between master plumbers with

restricted licenses and master plumbers with unrestricted licenses. On a motion to reargue, *amicus curiae* United Plumbers of Westchester, Inc. urged the court to allow reargument to consider whether the state law enabling the county licensing law violated the New York state Constitution. The district court addressed the issue in a footnote:

> *Amicus curiae* also argue that re-argument is appropriate because the issue of whether County Law § 236 violates Art. IX, § 2(d) of the New York State Constitution and the Home Rule, N.Y. Mun. Home Rule Law § 10–11 (McKinney 1994) was not briefed before this Court. This Court raised the issue during the oral argument on the summary judgment motion on September 17, 1999. While the Plumbing Licensing Law may have been enacted in violation of the New York State Constitution and the Home rule Law, this Court concludes on reflection that neither Plaintiffs nor *amicus curiae* have standing to raise this issue. Only a local municipality which wishes to license plumbers can raise this challenge to the Plumbing Licensing Law.

We review grants of summary judgment *de novo*. *Beatie v. City of New York*, 123 F.3d 707, 710 (2d Cir.1997).

Plaintiffs argue on appeal that the district court erred in finding plaintiffs lacked standing. Defendants argue plaintiffs failed to preserve the issue for review by not pressing it below. For an issue to be reviewable on appeal, a claim must be "pressed or passed upon below." *See United States v. Williams*, 504 U.S. 36, 41, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (internal quotations and citations omitted). The Home Rule issue was clearly not pressed below. Plaintiffs did not raise the Home Rule issue in either their complaint or their amended complaint. The district

court raised the issue *sua sponte* at oral argument on the summary judgment motion, and plaintiffs' counsel responded, "[w]e have not claimed a violation of Article 9 of the Constitution." Neither party briefed the issue. At oral argument on the reargument motion, counsel and the court agreed the Home Rule issue was never litigated. Nevertheless, the district court felt compelled to include a footnote in its memorandum and order on the reargument motion stating, "this Court concludes on reflection that neither Plaintiffs nor *amicus curiae* have standing to raise this issue." While scanty, this arguably satisfies the requirement that the issue be "passed upon" to be preserved for review. We are, however, troubled by the district court reaching an issue neither pressed nor briefed before it, and urge against such a practice in the future.

We agree with the district court's finding that plaintiffs lacked standing to pursue the Home Rule issue. In considering standing, courts look both to the Constitutional requirements of Article III and certain judicially determined prudential considerations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). One prudential consideration requires plaintiffs fall within the "zone of interests," meaning the interest plaintiffs seek to redress is arguably within the zone of interests regulated or protected by the constitutional provision or statute in question. *See Association of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Zone of interest analysis requires the court to first define the interests protected, then examine whether plaintiffs' affected interest is among them. *See National Credit Union Admin. v. First Family Nat'l Bank & Trust Co.*, 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998).

Our analysis thus begins with the Home Rule language of Article 9, § 2(d) of the New York State Constitution stating, "[e]xcept in the case of a transfer of functions under an alternative form of county government, a local government shall not have power to adopt local laws which impair the powers of any other local government." The purpose of the Home Rule amendment is to expand and secure the powers enjoyed by local governments. *See Town of East Hampton v. State*, 263 A.D.2d 94, 699 N.Y.S.2d 838, 839 (3d Dept. 1999) (individuals claiming Home Rule provision requires a way to create new counties lacked standing). The primary interest protected by the Home Rule provision is the autonomy of local governments. Here, plaintiffs' interest in the County's licensing law is how that law affects their ability to work as master plumbers. That interest is protected by the Home Rule provision indirectly, if at all. Plaintiffs are thus not within the zone of interests protected by the Municipal Home Rule provision. The district court correctly found plaintiffs lacked standing to pursue their Home Rule claim.

We turn now to plaintiffs' equal protection claims. "As a general rule, the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate government interest." *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998). A higher degree of scrutiny is only required when plaintiffs are members of a class that "has historically been the object of discrimination." *Able*, 155 F.3d at 631. "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Federal Communications Commission v. Beach Communications*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

The district court correctly found a rational basis existed for the distinctions made by the county, both in treating master plumbers differently than journeymen and in making geographic distinctions between master plumbers with restricted licenses and those with unrestricted licenses. Journeymen may only work when they are supervised by master plumbers, and only master plumbers may deal with customers and bid jobs. As each group has differing responsibilities, it is rational to require different licensing standards. With regards to the geographic distinctions between restricted and unrestricted licenses for master plumbers, defendants offer the rational reason that the restricted licenses permit master plumbers to work in those areas where they were already licensed, as expanding that work area without re-examination implicates health and safety concerns. Grandfathering in the master plumbers countywide would extend those licenses to areas where the master plumbers were not licensed before. Rational basis review allows "any conceivable state of facts" to provide a basis for classification. Defendants' reasons are sufficient to satisfy the standard.

We have considered plaintiffs' remaining arguments and find them without merit.